UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ALFRED CROOKS[1],

Petitioner,

-against-

ELIZABETH O'MEARA,

Respondent.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-01433 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On March 11, 2026, *pro se* Petitioner Alfred Crooks ("Petitioner") commenced this action against Elizabeth O'Meara ("Respondent") by filing a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See generally* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, Dkt. 1 ("Petition" or "Pet."). After a jury trial in New York State Supreme Court, Kings County, Petitioner was convicted of second-degree and fourth-degree criminal conspiracy in violation of New York Penal Law §§ 105.10(1) and 125.25(1), respectively. Affirmation Opposing Defendant's Petition for a Writ of Habeas Corpus ¶ 24, Dkt. 7 ("Affirmation in Opposition" or "Aff. in Opp'n"); *see generally* Exhibit E, Sentencing Transcript, Dkt. 7-6. Petitioner is currently serving "an indeterminate term of eight to twenty-four years on the second-degree conspiracy count and an indeterminate term of one-and-one-third to four years on the fourth-degree conspiracy count, with the sentences running concurrently." Aff. in Opp'n ¶ 25. Petitioner seeks habeas corpus relief on two grounds: (1) denial of his right to a speedy appeal and due process of law, and (2) ineffective assistance of counsel by his assigned counsel on appeal. Pet. at 6-8. For the following reasons, the Petition is denied.

---

[1] Petitioner's name is misspelled in the case opening as "Cooks." The Clerk of Court is directed to change the caption to reflect Petitioner's name as reflected on the Petition: "Alfred Crooks." *See* Pet. at 1.

## BACKGROUND[2]

### A. Charges and New York State Trial Court Proceedings

On March 19, 2019, Petitioner and four other defendants were involved in the pursuit and killing of an individual. Aff. in Opp'n ¶ 6. For his part, Petitioner joined the gunman in the pursuit of the victim after a co-defendant entreated him to join in an active chase. *Id.* ¶ 7. Petitioner joined in chasing the victim into a backyard, where the gunman fired shots, killing the victim. *Id.* ¶¶ 16-17.

Petitioner was charged in Kings County Indictment Number 1937/2019, with Conspiracy in the Second Degree (N.Y. Penal Law § 105.15), Conspiracy in the Fourth Degree (N.Y. Penal Law § 105.10[1]), Murder in the Second Degree (N.Y. Penal Law § 125.25[1]), and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[1][b]). *Id.* ¶ 19. The indictment was consolidated among Petitioner and four other co-defendants. *Id.* ¶ 21.

The trial court submitted to the jury one count each of Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Conspiracy in the Fourth Degree. *Id.* ¶ 23. "The murder and weapon-possession charge were submitted to the jury under an acting-in-concert theory." *Id.* On November 21, 2022, the jury convicted Petitioner of second-degree and fourth-degree criminal conspiracy and acquitted him of the murder and weapon-possession charges. *Id.* ¶ 24.

On January 12, 2023, Petitioner was sentenced "to an indeterminate term of eight to twenty-four years on the second-degree conspiracy count and an indeterminate term of one-and-one-third to four years on the fourth-degree conspiracy count, with the sentences running concurrently." *Id.* ¶ 25.

---

[2] The following facts are undisputed unless otherwise indicated.

### B. New York State Court Appeal

On February 7, 2023, Petitioner filed a notice of appeal. *Id.* ¶ 26. In April 2023, Petitioner moved *pro se* to proceed as a poor person on appeal and receive assigned counsel, and on August 21, 2023, the Appellate Division, Second Department denied his motion with leave to renew upon "proper papers," which would include an affidavit by Petitioner as to whether Petitioner's trial attorney was assigned or retained. *Id.* ¶ 27; *see* Exhibit G, Notice of Motion to Proceed as a Poor Person upon Appeal at 7, Dkt. 7-8.

In November 2023, Petitioner renewed his *pro se* request to proceed as a poor person on appeal and receive assigned counsel and on March 25, 2024, the Appellate Division, Second Department granted his motion, thereby assigning Joseph Z. Amsel ("Amsel") to represent the Petitioner. Aff. in Opp'n ¶ 28.

Based on a call on May 6, 2026, between counsel for Respondent and Amsel, Respondent reported that Amsel "anticipate[d] filing a brief in [Petitioner's] case soon," and noted the length of the record in the case. *Id.* ¶ 30. As of November 4, 2026, Petitioner had not perfected his appeal. *See generally People v. Crooks*, 2023-01891 (2d Dep't).

### C. Federal Procedural History

On March 11, 2026, Petitioner commenced this action. *See generally* Pet. Proceeding *pro se*, Petitioner challenges his guilty conviction on two grounds: (1) denial of his right to a speedy appeal and due process of law, and (2) ineffective assistance of counsel by his assigned counsel on appeal. Pet. at 6-8. Petitioner seeks his immediate release from prison. Pet. at 16. The case was initially assigned to Magistrate Judge Kaminsky. *See generally* Order to Show Cause, Dkt. 4 (ordered by Magistrate Judge Kaminsky). On March 23, 2026, Magistrate Judge Kaminsky issued an rder to show cause, directing the District Attorney for Kings County to file a return within 60

days, and Petitioner to file a reply, if any, within 21 days of receipt of a copy of the return. *See id.* ¶¶ 2, 5.

On May 21, 2026, Respondent filed a return to the order to show cause. *See generally* Memorandum of Law, Dkt. 7-1 ("Opposition" or "Opp'n"). Respondent argues that the Petition should be denied because (1) Petitioner does not establish that any delay in his state direct appeal entitles him to relief, and (2) because his appellate delay claim lacks merit, Petitioner's ineffective assistance of counsel claim likewise fails. Opp'n at 2. Petitioner did not file a reply.

On July 1, 2026, the case was reassigned to this Court after the parties did not file consent to the jurisdiction of the magistrate judge. *See* Notice, dated July 1, 2026.

## LEGAL STANDARD

### A. State Custody Habeas Petition Under - 28 U.S.C. § 2254 ("Section 2254")

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), limits federal district courts' ability to consider an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court." *Harrington v. Richter*, 562 U.S. 86, 97-98 (2011) (quoting 28 U.S.C. § 2254(d)). District courts may hear an application "only on the ground" that an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see generally Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

In doing so, federal district courts must apply the standard of review set out in Section 2254. Section 2254 permits federal habeas review of a state court's decision on the merits of a petitioner's claims where the state-court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2); *see Englert v. Lowerre*, 115 F.4th 69, 80 (2d Cir. 2024), *cert. denied sub nom.*, *Englert v. Bishop*, 145 S. Ct. 2826 (2025) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999)); *see also* 28 U.S.C. §§ 2254(b), (c). To exhaust state court remedies, the petitioner must "'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *accord Ali v. Superintendent of Otisville Corr. Facility*, 14-CV-03292 (DLI), 2015 WL 5657384, at *2 (E.D.N.Y. Sep. 23, 2015). "A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010) (quoting *Jones v. Keane,* 329 F.3d 290, 294-95 (2d Cir. 2003) (internal quotation marks omitted). The exhaustion requirement may be excused "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *accord Ellman v. Davis*, 42 F.3d 144, 149 (2d Cir. 1994); *see also* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State; or . . . there is an absence of available State corrective process; or . . . circumstances exist that render such process ineffective to protect the rights of the applicant.").

### B. *Pro Se* Litigants

Because Petitioner is proceeding *pro se*, the Court reads his "submissions liberally and interpret[s] them to raise the strongest arguments they suggest." *Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016) (quoting *Wright v. Comm'r*, 381 F.3d 41, 44 (2d Cir. 2004)).

## DISCUSSION

### A. Petitioner's Speedy Appeal Claim

Petitioner's first asserted ground for relief is an alleged violation of his right to a speedy appeal. Pet. at 6, 16. Petitioner states that after being convicted on conspiracy counts "without a scintilla of evidence proving he conspired to kill the decease[d]," his direct appeal will not be decided until after his November 2026 parole hearing. Pet. at 6. To explain why he did not exhaust his state court remedies, Petitioner contends that "every attempt to proceed in a timely manner has been delayed and frustrated by a complete and utter failure to perfect the criminal appeal in a timely and expedient manner," and that by the time the state court appeal is heard, he will have "served the entire sentence and no due process or speedy appeal will be afforded" as the state court direct appeal will be "moot." *Id.* Respondent argues that "[Petitioner] has not . . . establish[ed] that any delay in his state direct appeal entitles him to relief." Opp'n at 2.

First, Petitioner has not exhausted his state court remedies as his appeal of his criminal conviction remains pending before the state court. *See* Aff. in Opp'n ¶¶ 29-30. However, in the Second Circuit, "a failure to exhaust may be excused [] where there has been 'substantial delay in the state criminal appeal process.'" *Roberites v. Colly*, 546 F. App'x 17, 19 (2d Cir. 2013) (quoting *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991); *see Cody*, 936 F.2d at 718 ("[S]ubstantial delay in the state criminal appeal process is a sufficient ground to justify the exercise of federal habeas jurisdiction."). To determine whether appellate delay excuses exhaustion, courts consider

five factors: the length of the delay; the reason for the delay and the party responsible; whether the petitioner asserted his right to a decision; ensuing prejudice; and federal-state comity ("*Barker* factors"). *See Roberites*, 546 F. App'x at 19; *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990); *Barker v. Wingo*, 407 U.S. 514, 530 (1972). When applying the *Barker* factors, "no one factor is dispositive and all are to be considered together with the relevant circumstances." *Simmons*, 898 F.2d at 868; *Richard-Antonio v. O'Meara*, 12-CV-05174 (LAK) (SN), 2013 WL 5019395, at *6 (S.D.N.Y. May 21, 2013), *report and recommendation adopted*, 12 Civ. 5174 (LAK), 2013 WL 5049065 (S.D.N.Y. Sep. 13, 2013); *Barker*, 407 U.S. at 533.

Respondent argues that none of the five factors weigh in Petitioner's favor and that "even if [Petitioner] were entitled to relief, he would be entitled, at most, to a conditional grant of relief only if his appeal does not begin moving forward." Opp'n at 2. Reading the Petition liberally and considering the *Barker* factors, the Court holds that Petitioner has not met his burden to show that his failure to exhaust should be excused.

**1. Length of Delay**

The length of delay regarding Petitioner's appeal weighs in his favor. Petitioner asserts that "the appellate process is slow and every attempt to proceed in a timely manner has been delayed and frustrated by a complete and utter failure to perfect the criminal appeal in a timely and expedient manner." Pet. at 6. Further, Petitioner explains that "his direct appeal will not be decided until way after" his parole hearing, scheduled to take place in November 2026, such that Petitioner will have served his "entire sentence and no due process or speedy appeal will be afforded." *Id.* Petitioner filed a notice of appeal on February 7, 2023, and nothing in the record to date indicates that the appeal has been perfected. Aff. in Opp'n ¶ 26. Thus, Petitioner's appeal has been pending for three years and over eight months. Respondent argues that this "only just

reach[es] the threshold where courts find that this factor weighs sufficiently in favor of a petitioner to analyze this issue further," and thus only weighs weakly in Petitioner's favor. Opp'n at 2.

"Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Length of delay is therefore the threshold inquiry into the analysis of the remaining factors. *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *accord United States v. Ghailani*, 733 F.3d 29, 43 (2d Cir. 2013).

"The Second Circuit has not 'define[d] precisely, a specific interval of time after which a habeas petition based on delay of a state prisoner's appeal would excuse compliance with the federal exhaustion requirement.'" *Wells v. Miller*, 21-cv-11231 (LJL), 2023 WL 2647891, at *8 (S.D.N.Y. Mar. 27, 2023) (quoting *Simmons*, 898 F.2d at 870); *Richard-Antonio*, 2013 WL 5019395, at *7 ("The Court of Appeals for the Second Circuit . . . has counseled that '[t]he doctrine of exhaustion . . . does not require a prisoner to wait six years . . . or even three or four years before enlisting federal aid . . . .'" (quoting *Simmons*, 898 F.2d at 870)).

Some courts have found that delays of a similar length to Petitioner's nearly four-year delay violated due process or otherwise favored the petitioner when analyzing whether exhaustion should be excused under the *Barker* factors. *See Simmons*, 898 F.2d at 870 (holding that "the doctrine of exhaustion of state remedies does not require a prisoner to wait . . . even three or four years before enlisting federal aid to expedite an appeal"); *Roberites*, 546 F. App'x at 19-20 (finding that the 32 months between the petitioner's timely filing of his appeal and Section 2254 petition "tilt[ed] in favor of excusing [the petitioner's] failure to exhaust"); *Hayon v. Reardon*, 20-CV-4668 (PKC), 2021 WL 3774199 at *8 (E.D.N.Y. Aug. 24, 2021), *appeal dismissed* (2d Cir. Dec 14, 2021) (holding that the first *Barker* factor favored petitioner where the merits of the appeal had

not been decided over three years after petitioner filed notice of direct appeal); *Sinatra v. Barkley*, 741 F. Supp. 39, 41 (E.D.N.Y. 1990) (finding a two and a half-year time period to submit an appellate brief "substantial enough to approach 'presumptively prejudicial,'" but declining to find a due process violation). However, as Respondent asserts, many other courts that granted habeas corpus petitions recognized substantially longer delays, while others have declined to weigh the first *Barker* factor in the petitioner's favor until after the four-year mark. *See* Opp'n at 3 (first citing *Cody*, 936 F.2d at 718 (nine or 10 years); then citing *Brooks v. Jones*, 875 F.2d 30, 30-31 (2d Cir. 1989) (eight years); and then *Mathis v. Hood*, 851 F.2d 612, 614 (2d Cir. 1988) (six years)); *see also Vazquez v. Bennett*, 00 CIV. 3070 (AKH), 2002 WL 619282, at *2 (S.D.N.Y. Apr. 17, 2002) (collecting cases) ("The delay in this case—four years—is long, but not nearly as long as the delays in the cases cited above. The first *Barker* criterion does not offer petitioner much help."); *Wells v. Miller*, 21-cv-11231 (LJL), 2023 WL 2647891, at *8 (S.D.N.Y. Mar. 27, 2023), *reconsideration denied*, 2023 WL 3948628 (S.D.N.Y. June 12, 2023), *reconsideration denied*, 2024 WL 1251171 (S.D.N.Y. Mar. 21, 2024) ("[T]he Second Circuit has generally required more than three or four years of appellate delay before concluding that a prisoner's due process rights have been violated.").

Additionally, "courts have found appellate delays excessive when the delay constitutes a substantial fraction of the minimum sentence imposed on the appellant." *Brown v. Costello*, 00 Civ. 6421 (RCC) (MHD), 2004 WL 1837356, at *2 (S.D.N.Y. Aug. 17, 2004) (citing *Simmons*, 898 F.2d at 868) (holding that the petitioner's due process rights were violated, in part because the six-year delay, constituting one and a half years longer than the minimum sentence and two-thirds of the maximum sentence, was "excessive"); *Vilsaint v. Annucci*, 23 Civ. 5563 (PMH) (JCM), 2024 WL 3276400, at *5 (S.D.N.Y. May 23, 2024), *report and recommendation adopted*, 23-CV-

5563 (PMH), 2024 WL 3274729 (S.D.N.Y. July 2, 2024) (stating that "the length of Petitioner's sentence may also be considered," and finding that the first *Barker* factor weighed only slightly in favor of petitioner where "the four-year wait [was] only a small fraction of Petitioner's overall 15-year prison sentence"); *see also Wells*, 2023 WL 2647891, at *8 (finding the length of delay weighed in favor of petitioner where the appeal remained unperfected after four years, even though it represented a "relatively short proportion of his twenty-years to life sentence"); *Paulin v. Grady*, 14-cv-10128 (NSR) (PED), 2016 WL 4509068, at *5 (S.D.N.Y. Aug. 24, 2016), *appeal dismissed*, 2017 WL 4863152 (2d Cir. 2017) (finding first *Barker* factor weighed in favor of the petitioner where there was a delay of three years and five months out of a sentence of 24 years of imprisonment and five years of post-release supervision).

Here, the three-year, eight-month delay for the state court to adjudicate the merits of Petitioner's unperfected appeal just clears the threshold of undue delay sufficient to weigh in favor of Petitioner. Moreover, the delay is nearly the maximum length of his indeterminate one-and-one-third to four-year sentence on the fourth-degree conspiracy count, and nearly half of the minimum sentence on his concurrent sentence on the second-degree count—an indeterminate term of eight to twenty-four years. *See* Aff. in Opp'n ¶ 25.

**2. Reason for Delay and Party Responsible**

The second *Barker* factor is neutral or weighs against Petitioner. Petitioner generally attributes the delay of his appeal to the appellate process being "slow" and a failure to perfect the appeal "in a timely and expedient manner." *See* Pet. at 6. Respondent argues that the reason for delay is attributable to Petitioner. Opp'n at 7. Petitioner's April 2023 *pro se* motion to proceed as a poor person on appeal and receive assigned counsel was denied as insufficient in August 2023. *Id.*; Aff. in Opp'n ¶ 27. He renewed his motion in November 2023, which was granted in March

2024, and the case was subsequently assigned to Amsel. Aff. in Opp'n ¶ 28. Petitioner filed the instant habeas corpus petition in March 2026. *Id.* ¶ 31.

Additionally, Respondent argues that the fact that it has taken Amsel this long to perfect the appeal "is unsurprising" because the case is complex and the record is lengthy. Opp'n at 7-8. Furthermore, the appeals in Petitioner's co-defendants' cases were filed in January and November 2025, which is "not wildly out of step." *Id.* at 8. According to Respondent, Amsel has represented that he anticipated filing a brief "soon." *Id.* Respondent argues that "the delay in this case occurring after appellate counsel was appointed is attributable to a reasonable period for counsel to research defendant's case and perfect his appeal." *Id.*

In applying the second *Barker* factor, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while "a more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531; *see also United States v. Black*, 918 F.3d. 243, 260 (2d Cir. 2019) ("negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense" (quoting *Doggett*, 505 U.S. at 657)).

Here, the Court agrees one year of the delay, during which Petitioner sought poor person relief, is attributable to Petitioner and cannot be the cause of a due process violation. *See Trzuskot v. State*, 24 Civ. 7110 (AT) (RFT), 2026 WL 1102528, at *2 (S.D.N.Y. Apr. 23, 2026) (exhaustion not excused where petitioner "took months to request leave to prosecute her appeal as a poor person and filed papers that failed to comply with the Appellate Division's requirements"); *Richard-Antonio*, 2013 WL 5019395, at *7 (finding that one year of lost time attributable to petitioner's *pro se* motions to proceed as a poor person did not establish undue delay); *Ferguson v. Walsh*, 09-

CV-1575 (DLI), 2011 WL 1527973, at *4 (E.D.N.Y. Apr. 20, 2011) (holding that 10 year delay due to petitioner's failure to renew his motion for poor person relief and appointment of counsel did not result in a due process violation); *Collier v. Uhler*, 9:16-CV-00001 (LEK), 2016 WL 6072404, at *3-4 (N.D.N.Y Oct. 17, 2026) (finding no undue delay where petitioner's *pro se* motions filed concurrently with appointed counsel's motions accounted in part for the delay).

Petitioner has presented no facts to suggest that the remainder of the delay is the result of deliberate efforts by the state, nor any specifically negligent inaction by his appointed counsel or the Appellate Division. As a general matter, the state court must take responsibility for its appointed counsel because "it has the means to supervise its attorneys," therefore any inexcusable neglect of Petitioner's appeal on Amsel's part should be attributed to the state. *See Vazquez*, 2002 WL 619282, at *3; *Brown*, 2004 WL 1837356, at *3 (six-year delay attributable to state because caused primarily by turnover of appointed counsel who failed to perfect the appeal); (*Muwwakkil v. Hoke*, 968 F.2d 284, 285 (2d Cir. 1992) (finding petitioner was denied due process where petitioner actively pursued his appeal during a 13-year delay that was due to "the state's apparent failure to supervise its appointed counsel and monitor its calendar"). While Amsel has not perfected Petitioner's appeal in the last two and a half years (and counting), some courts have declined to find a due process violation in similar circumstances. *See Avent v. Napoli*, 08 Civ. 932 (VB) (LMS), 2013 WL 1788626, at *16 (S.D.N.Y. Feb. 7, 2013), *report and recommendation adopted*, 08 CV 932 (VB), 2013 WL 1787568 (S.D.N.Y. Apr. 26, 2013) (finding a perfected appeal two and a half years after conviction "well short" of excessive delay in the Second Circuit); *Ferguson*, 2011 WL 1527973, at *4 (two-year delay between petitioner's renewal of motion for appointment of counsel and perfection of appeal "not exceptional and does not amount to a due process violation"); *Paulin*, 2016 WL 4509068, at *6 n.5 (finding no due process violation where

delay of over two years by court-appointed counsel to perfect appeal was caused in part by the petitioner's "significant number of letters" to counsel).

Additionally, this delay is shorter than many delays found to weigh against the government and is not due to appellate counsel turnover. *See Brooks*, 875 F.2d at 31 (faulting state for eight-year delay due to appellate counsel turnover, counsels' "inattention and mismanagement" and "lack of any effective supervision by the Second Department"); *Vilsaint*, 2024 WL 3276400, at *6 (cause of delay attributed to state where unperfected appeal had been pending nearly four and a half years due to appellate counsel turnover and ignorance of New York State bar rules); *Simmons*, 898 F.2d at 868 (holding that counsel who took five years to perfect appeal was "nominal and ineffective as a matter of law" and a violation of due process); *Elcock v. Henderson*, 947 F.2d 1004, 1007 (2d Cir. 1991) (finding an eight and a half year delay excessive).

Accordingly, because the delay was caused in part by Petitioner's own *pro se* motions to proceed as a poor person on appeal, through no deliberate action on the part of the state, and the portion of delay attributable to the state has not yet reached an exceptional length, this factor is either neutral or weighs against Petitioner.

**3. Assertion of Right**

The third *Barker* factor weighs against Petitioner. Petitioner alleges that "every attempt to proceed in a timely manner has been delayed and frustrated by a complete and utter failure to perfect the criminal appeal in a timely and expedient manner." Pet. at 6. Respondent argues the assertions weigh against the Petitioner because he has not made any complaints to his appellate

counsel or any court absent the instant petition. *See* Opp'n at 5. Petitioner alleges no contrary facts. *See generally* Pet.

To determine whether Petitioner has asserted his right to a speedy appeal, courts in this Circuit consider: "(1) whether the petitioner takes steps to obtain counsel, (2) whether the petitioner regularly inquires of his counsel or the court about the delays in his appeal, and (3) whether the petitioner files a grievance against his appointed counsel." *Steward v. Napoli*, 24-CV-5758 (RA) (JW), 2025 WL 2494431, at *5 (S.D.N.Y. July 31, 2025), *report and recommendation adopted*, 24-CV-5758 (RA), 2025 WL 2494424 (S.D.N.Y. Aug. 28, 2025), *and objections overruled Steward v. Napoli*, 24-CV-5758 (RA), 2026 WL 18697 (S.D.N.Y. Jan. 2, 2026), *and objections overruled*, 24-CV-5758 (RA), 2026 WL 265702 (S.D.N.Y. Feb. 2, 2026), *appeal dismissed*, 25-2440, 2026 WL 3019413 (2d Cir. July 9, 2026) (quoting *Brown*, 2004 WL 1837356 at *3).Here, Petitioner obtained appointed counsel, *see* Aff. in Opp'n ¶ 28, but there is no evidence in the record that Petitioner ever made inquiries with Amsel or any court regarding the delay in his appeal other than the instant petition with this Court, and there is no evidence that he has filed any grievance against Amsel as his appointed counsel. Accordingly, this factor weighs against Petitioner. *See Steward*, 2025 WL 2494431, at *5 (finding no assertion of right where petitioner obtained counsel and received a letter from appellate counsel apologizing for delay, but provided no other relevant evidence); *Vilsaint*, 2024 WL 3276400, at *6 (finding no assertion of right where petitioner "contacted the Second Department on numerous occasions" but letters "contain[ed] no explicit request for new counselor for the appeal to be expedited"); *Richard-Antonio*, 2013 WL 5019395, at *8-9 (finding no diligent assertion of right where petitioner merely "exerted minimal effort to obtain a prompt resolution of his appeal"); *but see Vazquez*, 2002 WL 619282, at *3 (finding the assertion of right factor neutral because Petitioner's neglect "should not be given too

much weight, for his incarcerated state and his dependence on court-appointed counsel gave him few real options").

**4. Ensuing Prejudice**

Petitioner has not made a showing of prejudice due to appellate delay, therefore, the fourth *Barker* factor weighs against Petitioner. Petitioner alleges that he has been convicted of conspiracy counts with "no evidence . . . connect[ing] Petitioner to the crime," his parole hearing is in November 2026, and "his direct appeal will not be decided until way after that day," such that Petitioner will have served his "entire sentence and no due process or speedy appeal will be afforded." Pet. at 6. In opposition, Respondent contends that there is an absence of meaningful prejudice that weighs against the Petitioner. Opp'n at 9. Respondent also argues that to find petitioner's incarceration as oppressive before the Appellate Division hears the petitioner's appeal is speculative, since any injury suffered if his appeal is affirmed would not involve an illegal deprivation of liberty. Opp'n at 9-10. Respondent further notes that Petitioner's sole contention is that no evidence connects him to the crime or establishes that he conspired to kill the victim, but that this is unlikely to succeed because it would be subject to a high standard and there is in fact underlying evidence connecting Petitioner to the crime, which will be unaffected by the passage of time. *Id.* at 10-12. Finally, Respondent argues that Petitioner's claim that his appeal will be mooted is misguided, since even after he is released from prison, he would remain convicted and there is no reason to conclude that he would be unable to pursue his appellate claims after his release from prison. *Id.* at 13-14.

To assess whether Petitioner has been prejudiced by appellate delay, courts in the Second Circuit have adopted "a test akin to 'the second prong of the *Strickland* test,' holding that '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Wells*,

2023 WL 2647891, at *10 (citing *Mathis v. Hood*, 937 F.2d 790, 794 (2d Cir. 1991) (quoting *Strickland v. Washington*, 466 U.S. 668, 669 (1984)) (citation omitted)). Courts "cannot assume prejudice on the basis of delay alone" and Petitioner has not provided facts sufficient to determine that "there is a reasonable probability that, but for the delay, the results of the appeal would have been different." *Richard-Antonio*, 2013 WL 5019395, at *9 (citing *Mathis*, 937 F.2d at 794). Though Petitioner does not raise the argument, the record does not suggest that the delay will "impair[] his defense," for example, "by creating 'the risk of affected memories, witness [un]availability, [or] loss or destruction of potentially exculpatory evidence.'" *See United States v. Cain*, 671 F.3d 271, 297 (2d Cir. 2012) (assessing the *Barker* prejudice factor in the speedy trial context); *Paulin*, 2016 WL 4509068, at *6 (applying the prejudice analysis in *Cain* to an appellate delay claim). Here, Petitioner called no witnesses on his behalf at trial who might become unavailable or whose memories might weaken with the passage of time, and Petitioner's conduct was recorded on surveillance footage. *See* Opp'n at 12; *Richard-Antonio*, 2013 WL 5019395, at *9 (finding no prejudice to Petitioner in the absence of a showing that issues were present regarding the "inherent impairment of a defense upon retrial caused by the passage of time, namely the loss of memory by witnesses and the staling of evidence") (citing *Barker,* 407 U.S. at 532); *cf. Collier*, 2016 WL 6072404, at *4 (finding no prejudice because petitioner failed to assert specific allegations or evidence to support his claim that it would be more difficult to refresh witness memory at trial).

**5. Federal-State Comity**

Finally, considerations of comity weigh against granting Petitioner's writ for habeas corpus. While Petitioner does not address federal-state comity in his Petition, Respondent contends that federal-state comity weighs heavily against the Petitioner because there is no

evidence federal intervention is required in the case at hand. *See* Opp'n at 14; *see generally* Pet. "Comity [] dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *Robert v. Walcott*, 25-cv-01305 (NCM), 2026 WL 2969778, at *5-6 (E.D.N.Y. Oct. 2, 2026) (declining to waive the exhaustion requirement, dismissing without prejudice, and finding that "comity counsels against foreclosing petitioner's appeal from state review" "[b]ecause petitioner's direct appeal is pending in state court and is actively being pursued by petitioner"); *Ali v. Superintendent of Otisville Corr. Fac.*, 14-CV-03292 (DLI), 2015 WL 5657384, at *1 (E.D.N.Y. Sep. 23, 2015) ("Until this Court is assured that the state appeals process is complete, principles of federalism preclude it from granting habeas relief that may have the effect of derailing ongoing state proceedings."); *Wells*, 2023 WL 2647891, at *6 (declining to review Petitioner's habeas petition while direct appeal to state court was pending). Petitioner's appeal is still pending in state court and is, according to the Government's last update, *see* Aff. in Opp'n ¶ 30, still being actively pursued by Petitioner and his counsel, such that comity weighs against Petitioner.

For the reasons set forth above, the Court concludes that a majority of the *Barker* factors weigh against Petitioner and his failure to exhaust his claims before filing a writ of habeas corpus should not be excused.

**B. Petitioner's Ineffective Assistance of Appellate Counsel Claim**

Petitioner's Sixth Amendment claim for ineffective assistance of appellate counsel is also unexhausted. Petitioner claims that Amsel was ineffective because he failed to "move[] for a summary reversal" or join the application for "immediate release for his client." *See* Pet. at 8.

Petitioner explains that he did not exhaust his state remedies for ineffective assistance of appellate counsel "because their [sic] is no mechanism available." *Id.* Respondent contends that Petitioner's claim is "meritless" because (1) the Petitioner has no right to assistance of counsel for a federal habeas proceeding; (2) the record does not support the claim that Amsel has "rendered ineffective assistance on direct appeal"; and (3) a motion for summary reversal would not have succeeded such that Amsel's decision not to make one does not constitute deficient performance or cause prejudice to Petitioner. *See* Opp'n. at 16-19.

Under New York law, a petition for "coram nobis is the appropriate remedy for ineffective assistance of appellate counsel." *Sweet v. Bennett*, 353 F.3d 135, 141 n.7 (2d Cir. 2003); *see Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) ("In a criminal action, the writ of error coram nobis lies in [the state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." (quoting *People v. Gordon*, 183 A.D.2d 915 (2d Dep't 1992)); *Turner v. Miller*, 124 F. App'x 682, 683-84 (2d Cir. 2005) ("the proper vehicle for advancing the ineffectiveness claim for his attorney's failure to file the notice of appeal is a coram nobis petition to the Appellate Division"); *Shomo v. Maher*, 04-CV-4149 (KMK), 2005 WL 743156, at *3 (S.D.N.Y. Mar. 31, 2005) (citing N.Y. Crim. Proc. L. §§ 450.90(1), 460.10(5)(a)).

Petitioner has not exhausted his Sixth Amendment claim as nothing in the record indicates that Petitioner has raised it in any state forum. *See generally* Pet.; Aff. in Opp'n. Moreover, a petition for a writ of error coram nobis remains available to Petitioner, as there is no deadline to file such a petition. *See Sweet*, 353 F.3d at 141 n.7 (2d Cir. 2003); *Fernandez v. Artuz*, 402 F.3d 111, 115-16 (2d Cir. 2005) (stating that "New York State prescribes no deadlines for *coram nobis* petitions" when considering whether to apply the federal mailbox rule to AEDPA statute of

limitations analysis); *Moncayo v. Superintendent Green Haven Corr. Facility*, 797 F. Supp. 3d 175, 191-92 (E.D.N.Y. 2025) ("ineffective assistance of appellate counsel claims are deemed exhausted only if they are first raised in a *coram nobis* petition with the Appellate Division, and, if denied, then presented in an application to the Court of Appeals seeking leave to appeal the Appellate Division's ruling"); *Gordon v. Bradt*, 9-CV-4383 (RJD), 2014 WL 1237370, at *4-5 (E.D.N.Y. Mar. 25, 2014) (finding state court filings insufficient to establish exhaustion of petitioner's ineffective assistance of appellate counsel claim "because in New York, 'the coram nobis petition is the only way to exhaust this type of claim for habeas purposes'" (quoting *Daley v. Lee*, 10-CV-6065 (NGG), 2012 WL 2577472, at *7 (E.D.N.Y. July 3, 2012)); *see also Ali*, 2015 WL 5657384, at *2 ("Petitioner's claim that he received ineffective assistance from his appellate counsel apparently still can be pursued through a *coram nobis* proceeding before the Appellate Division, and, thus, that claim should not be deemed exhausted."). Accordingly, Petitioner's ineffective assistance of appellate counsel claim is unexhausted.

**CONCLUSION**

For the foregoing reasons, the Petition is denied without prejudice. The Court declines to issue a certificate of appealability because Petitioner has not demonstrated "a substantial showing of denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Vilsaint*, 2024 WL 3276400, at *7; 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

November 16, 2026
Brooklyn, New York